# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | **Case No. 23-59726-PWB** |
| | : | |
| **RED APPLE INVESTMENTS LLC,** | : | **Chapter 11** |
| | : | |
| Debtor. | : | |
| | : | |

## MOTION FOR ENTRY OF ORDER APPROVING SALE OF PROPERTY TO PHILLIP BROOKS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, TO MAKE CERTAIN DISBURSEMENTS AT CLOSING, AND FOR RELATED RELIEF

COMES NOW Red Apple Investments LLC (the "**Debtor**"), and hereby files this Motion (the "**Motion**") seeking entry of a Court Order, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Order**"), pursuant to §§ 105(a) and 363 of Title 11, United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to sell the below described "**Property**" to Phillip Brooks and/or assigns (the "**Buyer**") free and clear of all liens, claims and encumbrances, with all valid liens, claims and encumbrances to attach to the sales proceeds. In addition, the Debtor seeks authorization to make certain disbursements at closing and related relief. In support of this Motion, the Debtor respectfully shows the Court as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105(a) and 363 of Title 11 of the Bankruptcy Code and Rule 2002 of the Bankruptcy Rules.

## INTRODUCTION AND BACKGROUND

2.   On October 3, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code through the offices of the undersigned. In accordance with 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor is managing its affairs as a debtor in possession.  No official committee of unsecured creditors has been appointed pursuant to 11 U.S.C. § 1102.

3.   The Debtor owns and operates a 94-unit apartment complex known as Tara Woods Apartment located in Clayton County, Georgia and having a local address of 661 Sherwood Drive, Jonesboro, Georgia 30236 (the "**Property**").  The Annual Tax Assessment issued by the Clayton County Board of Tax Assessors for Tax Year 2023 shows the Current Year Fair Market Value of the Property to be $10,229.606.00.

## COMMERCIAL PURCHASE AND SALE AGREEMENT

4.   The Debtor and the Buyer have entered into that certain Commercial Purchase And Sale Agreement dated November 1, 2023, as amended, a true and correct copy of which is attached hereto as **Exhibit "A"** (the "**Sale Agreement**").  The Debtor does not have a pre-existing relationship with the Buyer.

5.   The Debtor submits that the following is an accurate summary of the terms of the Sale Agreement although parties in interest are urged to read the Sale Agreement so that they may fully understand its terms.  The gross purchase price for the below defined Property is Nine Million Nine Hundred Thousand Dollars ($9,900,000.00) (the "**Purchase Price**").  Earnest money in the amount of Fifty Thousand Dollars ($50,000.00) (the "**Earnest Money**") has been deposited with Balfour Title Agency, LLC (the "**Escrow Agent**").  Closing is to occur January 23, 2024 (the "**Closing Date**") to be extended via amendment to a date after the hearing date on Court approval of this Motion.  The closing law firm is SRS Title & Associates (the "**Closing Attorneys**").  The **Binding Agreement Date** is November 2, 2023.  There is a **Due Diligence Period** of twenty-one (21) days from the Binding Agreement Date.  The Buyer is obtaining a

private loan. The Buyer shall be responsible for all lender fees outside of the origination fee due to American Mortgage Lenders Co. The Seller shall pay the 1.38% origination fee to American Mortgage Lenders Co. The Property is in need of repair. The Buyer has obtained a written estimate of $4,903,968.00 required to perform the needed repair and restoration work. The Seller shall contribute $800,000.00 (the "**Seller Repair Contribution**") at Closing as a contribution towards the required repair and restoration costs.

6.    The Debtor believes but does not warrant that the following parties assert the following lien claims:

(a)  Forbix Capital Corp. ("**Forbix**") holds a deed to secure debt on the Property with an asserted claim amount of $7,200,000.00;

(b)  The Clayton County Tax Commissioner holds claims for unpaid ad valorem property taxes in the approximate amount of $161,611.39 for tax year 2023;

(c)  Kreo Building Solutions, LLC holds a Writ of Fi Fa filed October 2, 2023 with the Clerk, Superior Court of Clayton County, in the amount of $226,800.00;

(d)  Delta Carpet & Decor, LLC filed two separate Mechanics And Materialmens Liens on July 7, 2022 in the aggregate amount of $43,629.34;

(e)   Structure Medic Cleaning and Restoration LLC filed a Claim of Lien on May 23, 2023 in the amount of $8,500.00;

(f)  Rhino Environmental LLC asserts a lien filed in the Clayton County public records having a claim amount of approximately $32,208.00; and

(g)  Yaniv Yair filed a Deed to Secure Debt on October 30, 2023 with the Clayton County Superior Court showing a $63,500.00 claim amount. However, the Deed to Secure Debtor was filed after the Petition Date and is therefore not a properly perfected security interest in the Property.

## RELIEF REQUESTED

7.    The Debtor seeks entry of the Proposed Order substantially in the form as attached

hereto as **Exhibit "B"** authorizing the Debtor to consummate the closing of the sale of the Property to Buyer pursuant to the terms of the Sale Agreement. The sale is to be conducted free and clear of all liens, claims, encumbrances and interests, with all claims, encumbrances and interests to attach to the proceeds of the sale (the "**Sales Proceeds**") in the same amount, validity and priority as they may have attached to the Property as of the Petition Date. The Debtor further requests authority to pay the Sales Proceeds at Closing as follows:

   a. All usual and customary closing costs and prorations at Closing as reflected in the Sale Agreement;

   b. Mortgage payoff to Forbix in the asserted amount of approximately $7,200,000.00[1] with the exact amount of the payment to be verified by appropriate payoff letter provided by Forbix;

   c. $226,800.00 to Kreo Building Solutions, LLC in connection with the Writ of Fi Fa filed October 2, 2023 in the Clayton County public records that it holds;

   d. Ad valorem property taxes due to the Clayton County Tax Commissioner;

   e. Real estate commission in the amount of 4.6% ($455,400.00) to real estate broker EXP Realty, LLC/Prince Carter[2];

   f. 1.38% ($136,620.00) loan origination fee to American Mortgage Lenders Co./Yashica Berry; and

   g. The $800,000.00 Seller Repair Contribution.

8.     The remaining net sales proceeds shall be escrowed with the real estate closing law firm of McCain Cigelske Law Firm, Tyler C. McCain Esq., 6190 Powers Ferry Road, Suite 190, Atlanta, GA 30339[3]. Notwithstanding anything contained herein to the contrary, to the

---

1  It is not currently clear how Forbix calculates its asserted payoff amount.
2  A separate Application has or will be filed with the Court seeking entry of a Court Order approving the Commercial Exclusive Seller Brokerage Engagement Agreement dated November 17, 2023 by and between the Debtor and EXP Realty, LLC/Prince Carter
3  A separate Application has or will be filed with the Court seeking entry of a Court Order approving the Escrow Agreement dated January __, 2024 by and between the Debtor and McCain Cigelske Law Firm.

extent that any of the payment amounts referenced in paragraph number 7 above are in dispute, then they shall not be paid at Closing and payment of the same shall be subject to further Court Order.

**BASIS FOR RELIEF**

9. Section 363 of the Bankruptcy Code authorizes a debtor in possession "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

10. The Debtor requests that the Court authorize the sale of the Property free and clear of all liens, claims, encumbrances and interests, with all liens, claims, encumbrances and interests to attach to the Sales Proceeds in the same amount, validity and priority as they attached to the Property as would otherwise exist.

11. Section 363(f) of the Bankruptcy Code allows a sale to proceed free and clear of liens, only if -

(a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

12. Here, it appears that all valid, perfected liens on the Property in liquidated amounts will be paid in full at closing.

---

## A FINDING THAT THE SALE IS IN GOOD FAITH

13.   The Debtor states that upon information and belief made after reasonable inquiry, the Buyer does not have an adverse pre-existing connection with any of the Movants or their respective shareholders, creditors, or any other party in interest herein, their attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, and the Buyer represents no interest adverse to the estates.

14.   The Debtor has attempted to sell the Property for some time to no avail.  It has previously been presented with other offers, all for lesser amounts relative to the Sale Agreement, but for one reason or another they have not closed.  The Sale Agreement represents the best offer that the Debtor has received.  The Debtor submits that the Sale Agreement represents a fair offer for the Property.

15.   Moreover, the sale of the Property pursuant to the Sale Agreement will enable the Debtor to pay creditors and exit bankruptcy court.

16.   The Debtor submits that: (a) the sale of the Property pursuant to this Motion is in the best interests of the creditors and the estates, (b) the Purchase Price represents the fair market value of the Property, and (c) the proposed sale will provide the most efficient, effective and appropriate disposition of the Property, and will avoid continuing costs, risks, and possible deterioration and diminution in value.

17.   The Debtor requests that Federal Rule of Bankruptcy Procedure 6004(g) be waived so that the Debtor may immediately implement and enforce any Order approving this Motion upon its entry with the Clerk of Bankruptcy Court.

18.   The Debtor requests that the protections afforded to a purchaser with regard to sale transactions under §363(m) of the Bankruptcy Code be afforded to the Buyer, which provides that the reversal or modification on appeal of an authorization to an entity that purchased or leased the property in good faith does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith.  Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct

that would destroy a good faith finding involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986). The Debtor submits that the Debtor and the Buyer have proceeded in good faith. Therefore, the sale is entitled to the protections of § 363(m) of the Bankruptcy Code.

19. The Debtor requests that any Order granting this Motion shall (i) survive entry of any Order dismissing this bankruptcy case or converting this bankruptcy case to Chapter 7; and (ii) be binding on any successor Chapter 11 or Chapter 7 Trustee.

WHEREFORE, the Debtor prays that this Motion be filed, read, and considered and that the Court grant the relief moved for herein and such other relief as the Court deems appropriate.


Dated: January 5, 2024

Prepared and submitted by,
PAUL REECE MARR, P.C.
Attorneys for the Debtor

 /s/ Paul Reece Marr
Paul Reece Marr
GA Bar #471230
6075 Barfield Road; Suite 213
Sandy Springs, GA 30328
770-984-2255
paul.marr@marrlegal.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | **Case No. 23-59726-PWB** |
| | : | |
| **RED APPLE INVESTMENTS LLC,** | : | **Chapter 11** |
| | : | |
|    Debtor. | : | |
| ——————————————— | : | |

### CERTIFICATE OF SERVICE

    This is to certify that I have on this day electronically filed the attached *MOTION* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to all registered parties who have filed appearances in the above captioned case as follows:

Thomas Dworschak on behalf of U.S. Trustee Mary Ida Townson, United States Trustee, Region 21
thomas.w.dworschak@usdoj.gov, ltctommyd@aol.com

Benjamin R Keck on behalf of Creditors Delta Carpet & Decor, LLC and Rhino Environmental, LLC
bkeck@kecklegal.com, 2411851420@filings.docketbird.com,922 2034420@filings.docketbird.com

James W. Hays on behalf of Creditor Forbix Capital Corp.
beau@hpmlawatl.com

Michael Brian Pugh on behalf of Creditor Kreo Building Solutions, LLC
mpugh@tokn.com, drobison@tokn.com

    In addition, I have served copies of the Motion via first class U.S. Mail, with adequate postage prepaid, on the following parties at the addresses indicated:

Thomas Dworschak
Office of the United States Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303

James W. Hays
Hays & Potter, LLP
Suite 300
3945 Holcomb Bridge Rd.
Peachtree Corners, GA 30092

Phillip Brooks
541 10th Street NW
Unit 2119
Atlanta, GA 30318

EXP Realty, LLC
Prince Carter
1230 Peachtree Street NE
Suite 1900
Atlanta, GA 30309

Benjamin R Keck
Keck Legal, LLC
Suite 104-252
2566 Shallowford Road
Atlanta, GA 30345

McCain Cigelske Law Firm
Tyler C. McCain Esq.
6190 Powers Ferry Road, Suite 190
Atlanta, GA 30339

Michael Brian Pugh
Thompson, O'Brien, Kappler & Nasuti, P.C.
Suite 400
2 Sun Court
Peachtree Corners, GA 30092

SRS Title & Associates
3400 Peachtree Rd NE
Suite 1300
Atlanta, GA 30326

Balfour Title Agency, LLC
2480 Briarcliff Road NE
Suite 6 #335
Atlanta, GA 30329

Structure Medic Cleaning and
Restoration LLC
3541 Cherokee St Bldg 100
Kennesaw GA 30144

Structure Medic Cleaning
and Restoration LLC
c/o Mark D. Gropp, Attorney At Law
2020 Towne Lake Hills West
Woodstock, GA 30189

Clayton Cnty Tax Commissioner
Annex 3, 2nd Floor
121 S. McDonough Street
Jonesboro GA 30236

This the 5th day of January, 2024.

/s/ Paul Reece Marr
Paul Reece Marr
GA Bar No. 471230

PAUL REECE MARR, P.C.
6075 Barfield Road; Suite 213
Sandy Springs, GA 30328
770-984-2255
paul.marr@marrlegal.com

**EXHIBIT "A"**
**SALE AGREEMENT FOLLOWS**

# COMMERCIAL PURCHASE AND SALE AGREEMENT

Offer Date: _____ 11/1/2023



**2023 Printing**

## A. KEY TERMS AND CONDITIONS

**1. Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

    **a. Property Identification:** Address: _____ 661 Sherwood Drive

    City __Jonesboro__, County __Clayton - GA__, Georgia, Zip Code __30236__

    MLS Number: _____ Tax Parcel I.D. Number: __13-0175A-00A-003__

    **b. Legal Description:** The legal description of the Property is attached as Exhibit A hereto.

| 2. Purchase Price of Property to be Paid by Buyer.<br>$9,900,000.00 | 3. Closing Costs.<br>Seller's Contribution at Closing: $0.00 |
|---|---|
| 4. Closing and Possession Date.<br>              11/30/2023 | 11/30/2023 |
| 5. Closing Law Firm. SRS Title & Associates<br><br>Phone Number: (678) 404-5658 | 6. Holder of Earnest Money/Escrow Agent.<br><br>Balfour Title Agency, LLC |

**7. Earnest Money.**

    **a.** Earnest Money shall be paid by ☐ check ☐ cash or ☑ wire transfer of immediately available funds as follows:

        ☐ i. $_____ as of the Offer Date.

        ☑ ii. $50,000 _____ within __3__ days from the Binding Agreement Date.

        ☐ iii. _____

    **b.** Disputes regarding Earnest Money shall be resolved by a reasonable interpretation by ☑ Holder OR ☐ arbitration.

**8. Due Diligence Period.** Property is being sold subject to a Due Diligence Period of __21__ days from the Binding Agreement Date. Seller shall deliver Due Diligence Materials to Buyer within __14__ days from Binding Agreement Date.

**9. Title Examination.** Buyer shall have __21__ days from the Binding Agreement Date in which to furnish written title objections to Seller ("Title Examination Period").

**10. Existing Brokerage Commissions or Management Obligations.** If there are any brokerage commissions or management obligations due in connection with any leases or other agreements pertaining to the Property, then ☐ the existing brokerage commissions or management obligations will be paid by Seller at Closing, OR ☐ Buyer will assume existing lease commissions and/or management obligations.

**11. Assignment.** Buyer ☐ may OR ☑ may not assign this Agreement in accordance with the terms of this Agreement.

**12. Brokerage Relationships in this Transaction.**

| **a.** Buyer's Broker is EXP Realty, LLC. and is: | **b.** Seller's Broker is EXP Realty, LLC. and is: |
|---|---|
| (1) ☐ representing Buyer as a client. | (1) ☑ representing Seller as a client. |
| (2) ☑ working with Buyer as a customer. | (2) ☐ working with Seller as a customer. |
| (3) ☐ acting as a dual agent representing Buyer and Seller. | (3) ☐ acting as a dual agent representing Buyer and Seller. |
| (4) ☐ acting as a designated agent where: | (4) ☐ acting as a designated agent where: |
| _____ has been assigned to exclusively represent Buyer. | _____ has been assigned to exclusively represent Seller. |

    **c. Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
N/A

**13. Time Limit of Offer.** The Offer set forth herein expires at _____ o'clock _____.m. on the date _____.

Buyer(s) Initials __PB__ 

Seller(s) Initials __RAIL__

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Prince Carter__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.    CF04, Commercial Purchase and Sale Agreement, Page 1 of 9, 01/01/23

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A**

1. **Purchase and Sale.**
    a. **Seller's Obligations at Closing.** At Closing, Seller shall deliver to Buyer: (a) a Closing Statement; (b) Limited Warranty Deed; (c) FIRPTA Affidavit (indicating that Seller is not a "foreign person" or "foreign corporation" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986); (d) an Affidavit of Seller's Residence Regarding Georgia Withholding Tax, establishing that Seller is exempt from the requirements of O.C.G.A. § 48-7-128, the Georgia Withholding Statute (or Affidavit of Exemption or Affidavit of Seller's Gain, if withholding is required); (e) a transfer tax declaration form properly signed and executed by Seller; and, (f) all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to Buyer and to the Title Company in the form customarily used in Georgia commercial real estate transactions so as to enable the Title Company to issue Buyer the Title Policy with all standard exceptions deleted and subject only to the Permitted Exceptions and evidence reasonably satisfactory to Title Company of its due and proper authority and power to perform its obligations hereunder. In addition, Seller shall deliver to Buyer at Closing all documents/items indicated in Exhibit "C", if any. (All documents to be delivered by Seller under this paragraph, including all documents/items indicated in Exhibit "C" are collectively "Seller's Closing Documents".)
    b. **Conditions to Closing.**
        i. **Conditions in Favor of Buyer:** The obligation of Buyer to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
            (a) All representations and warranties of Seller made herein shall remain true and correct;
            (b) Seller shall have performed all of the covenants undertaken by Seller in this Agreement to be performed by Seller at or prior to Closing;
            (c) Seller shall have delivered to the Buyer properly executed originals of Seller's Closing Documents;
            (d) There shall have been no material adverse change in the physical condition of Property, except as otherwise provided for in this Agreement; and
            (e) The issuance at Closing of the Title Policy (or marked binder), with all standard exceptions deleted and subject only to the Permitted Exceptions.
        ii. **Conditions in Favor of Seller:** The obligation of Seller to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
            (a) All representations and warranties of Buyer made herein shall remain true and correct;
            (b) Buyer shall have performed all of the covenants undertaken by Buyer in this Agreement to be performed by Buyer at or prior to Closing; and
            (c) Buyer shall have: (a) delivered to the Seller properly executed originals of the transfer tax declaration form, title policy documents, closing statement, and any other documents identified in Exhibit "C" that require Buyer's signature; and (b) paid the Purchase Price, plus or minus prorations and adjustments, to Seller.

2. **Purchase Price of Property to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at Closing by wire transfer of immediately available funds, or such other form of payment acceptable to the Closing Attorney.

3. **Closing Costs.**
    a. **Seller's Costs:** Seller shall pay the amount of Seller's Monetary Contribution at Closing, if any, referenced in this Agreement, the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, quitclaim deeds and financing statement terminations; all deed recording fees and the fees of Seller's counsel.
    b. **Buyer's Costs:** Buyer shall pay the cost of Buyer's counsel and consultants; all transfer taxes; any costs in connection with Buyer's inspection of Property and any costs associated with obtaining financing for the acquisition of Property (including any intangibles tax, all deed recording fees and the cost of recording Buyer's loan documents); and the cost of any title examination, survey of the Property obtained by Buyer and any owner's or lender's title insurance.
    c. **Taxes and Prorations.** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing; rents, tenant improvements costs and leasing commissions on Property for the calendar year in which the Closing takes place shall be prorated as of 12:01 a.m. on the Closing Date. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal shall be deemed assigned to Buyer at closing.

4. **Closing and Possession Date.**
    a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (including in transactions where the financing contingency has expired) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
    b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Closing Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing. In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer in preparing the Closing documents, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement signed by the parties and closing attorney, timely recording deeds and issuing an owner's title insurance policy. Other than those services specifically listed above, nothing herein shall obligate the closing attorney to perform other legal services, including, but not limited to, certifying or warranting title of the Property, for the Buyer, except pursuant to a separate engagement agreement signed by the closing attorney and the Buyer.

6. **Holder of Earnest Money/Escrow Agent.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving of earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

7. **Earnest Money.**
   a. **Receipt:** In the event Buyer terminates this Agreement during the Due Diligence Period or does not otherwise close this transaction, Buyer shall promptly return all Due Diligence materials to Seller. The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored for any reason by the bank upon which it is drawn, Holder shall promptly give notice to Buyer and Seller. Buyer shall have 3 banking days after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer.
   b. **Entitlement to Earnest Money:** Subject to the Disbursement of earnest money paragraph below:
      (1) Buyer shall be entitled to the earnest money upon: (a) failure of the parties to enter into a binding agreement; (b) failure of any contingency or condition to which this Agreement is subject; (c) termination of this Agreement due to the default of Seller; (d) the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or (e) upon the closing of Property.
      (2) Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.
   c. **Disbursement of Earnest Money:** Holder shall disburse Earnest Money only as follows: (a) at Closing; (b) upon a subsequent written agreement signed by Buyer and Seller; (c) as set forth below in the event of a dispute regarding earnest money; or (d) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). No party shall seek damages from Holder, nor shall Holder be liable for any such damages, for any matter arising out of or related to the performance of Holder's duties hereunder.
   d. **Disputes Regarding Earnest Money:** In the event Buyer or Seller notifies Holder of a dispute regarding the disposition of Earnest Money that Holder cannot resolve, Holder shall settle the dispute in accordance with method selected on the cover page of this Agreement.
      (1) **Reasonable Interpretation by Holder:** In the event earnest money disputes are to be resolved by Holder herein, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 10 days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.

---

(2) **Arbitration:** In the event arbitration is selected as the method to resolve earnest money disputes, such disputes shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award.

8. **Due Diligence.** Buyer has paid Seller the sum of $25, the receipt of which is hereby acknowledged by Seller, as option money for Buyer having the right to terminate this agreement during the Due Diligence Period. Prior to closing, Buyer and Buyer's agents shall have the right to enter upon Property at Buyer's expense, and at reasonable times, to inspect, survey, examine, and test Property as Buyer may deem necessary as part of Buyer's acquisition of Property. Buyer shall indemnify and hold Seller and all Brokers harmless from and against any and all claims, injuries, and damages to persons and/or property arising out of or related to the exercise of Buyer's rights hereunder. During the Due Diligence Period Buyer may evaluate Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer. During the Due Diligence Period, Buyer shall have the right to terminate this Agreement upon notice to Seller if Buyer determines, based on an evaluation of the above, that it is not desirable to proceed with the transaction. In such event, Holder shall promptly refund Buyer's earnest money in accordance with the earnest money paragraph below.

9. **Title Examination.**
   a. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections prior to the end of the Title Examination Period. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   b. **Warranties of Seller:** Seller warrants that at Closing, Seller shall convey good and marketable, fee simple title to Property to Buyer by limited warranty deed, subject only to the following exemptions:
      (1) Zoning;
      (2) Leases, if any, specified in this Agreement;
      (3) General utility, sewer and drainage easements of record as of the Binding Agreement Date;
      (4) Liens for ad valorem taxes not yet due and payable;
      (5) Those exceptions to which Buyer does not object or which Buyer waives in accordance with the Title Objections paragraph below.
      (6) Those Permitted Exceptions attached hereto and incorporated herein as an exhibit to which Buyer has agreed not to object. For all purposes under this Agreement, "Good and marketable, fee simple title" with respect to Property shall be such title: (a) as is classified as "marketable" under the Title Standards of the State Bar of Georgia; and (b) as is acceptable to and insurable by a title insurance company doing business in Georgia ("Title Company"), at standard rates on an American Land Title Association Owner's Policy ("Title Policy").
   c. **Title Objections:** Seller shall have until the Closing to cure all valid title objections ("Title Cure Period"). Seller shall satisfy any existing liens or monetary encumbrances identified by Buyer as title objections which may be satisfied by the payment of a sum certain prior to or at Closing. Except for Seller's obligations in the preceding sentence, if Seller fails to cure any other valid title objections of Buyer within the Title Cure Period (and fails to provide Buyer with evidence of Seller's cure satisfactory to Buyer and to the Title Company), Buyer may, as Buyer's sole remedies: (1) rescind the transaction contemplated hereby, in which case, Buyer shall be entitled to the return of Buyer's earnest money; (2) waive any such objections and elect to close the transaction contemplated hereby irrespective of such title objections and without reduction of the Purchase Price; or (3) extend the Closing Date for a period of time not to exceed fifteen (15) days to allow Seller further time to cure such valid title objections. Failure to act in a timely manner under this paragraph shall constitute a waiver of Buyer's rights hereunder. Buyer shall have the right to re-examine title prior to Closing and notify Seller at Closing of any title objections which appear of record after the date of Buyer's initial title examination and before Closing.

10. **Existing Brokerage Commissions or Management Obligations.** The Property may be subject to management, service or other contracts that affect the Property that cannot be terminated at Closing by Buyer. Seller agrees to provide Buyer with copies of any management, service or other contracts that affect the Property as part of the Due Diligence Materials to be delivered by Seller to Buyer.

11. **Assignment.** If Buyer does not have the right to assign this Agreement, then Buyer cannot assign this Agreement without the prior written permission of Seller. Any such approved assignment shall not release the original Buyer from any liabilities or obligations herein. Notice of such assignment shall be delivered to the Seller within 2 working days of execution, but not less than 5 days from closing. If Buyer has the right to assign this Agreement, then this Agreement may be assigned by the Buyer to any legal entity of which the Buyer or a principal or principals of Buyer own at least a 25% interest.

**12.** **Brokerage Relationships in this Transaction.**

    **a.** Unless otherwise specified herein, the real estate commissions owing to the Seller's Broker and Buyer's Broker, if any, are being paid pursuant to separate brokerage engagement agreements. Buyer and Seller agree that any commissions to be paid to Broker(s) shall be shown on the settlement statement and collected by closing attorney as a pre-condition to Buyer and Seller closing on the Property so long as the same is permitted by Buyer's mortgage lender, if any. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s). If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein. The broker(s) are express third-party beneficiaries to this Agreement.

    **b.** **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

**13.** **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

**1.** **Notices.**

    **a.** **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

    **b.** **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

    **c.** **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Destruction of Property Prior to Closing.** If the Property is destroyed or substantially destroyed prior to Closing, Seller shall give Buyer prompt notice thereof, which notice shall include Seller's reasonable estimate of: (1) the cost to restore and repair the damage; (2) the amount of insurance proceeds, if any, available for the same; and (3) whether the damage will be repaired prior to Closing. Upon notice to Seller, Buyer may terminate this Agreement within 7 days of receiving such notice from Seller. If Buyer does not terminate this Agreement, Buyer shall be deemed to have accepted Property with the damage and shall receive at Closing: (1) any insurance proceeds which have been paid to Seller but not yet spent to repair the damage; and (2) an assignment of all unpaid insurance proceeds on the claim.

3. **Representations and Warranties.**
   a. **Seller's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Seller makes the representations and warranties to Buyer, if any, as indicated in Exhibit "D", if attached.
   b. **Buyer's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer.

4. **Default.**
   a. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.
   b. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
   c. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

5. **Other Provisions.**
   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same.  Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty.  If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
   b. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   c. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   d. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller (SS611). Any assignee shall fulfill all the terms and conditions of this Agreement.
   e. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.
   f. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
   g. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

**h. No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.

**i. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

**j. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

**k. Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

**l. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
(1) Handwritten changes shall control over pre-printed or typed provisions;
(2) Exhibits shall control over the main body of the Agreement;
(3) Special Stipulations shall control over both exhibits and the main body of the Agreement;

**m. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

**n. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) the section on condemnation; (5) the section on attorney's fees; (6) the obligations of the parties regarding ad valorem real property taxes; and (7) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

**o. Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

**p. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

**q. Time of Essence:** Time is of the essence of this Agreement.

**6. Definitions.**

**a. Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

**b. Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement.

**c. Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

**d. Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

**e. Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

**f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

**g. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

7. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

8. **LIMIT ON BROKER'S LIABILITY. BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):**
   a. **SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND**
   b. **NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**

9. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.
   - ☑ Exhibit "A" Legal Description
   - ☐ Exhibit "B" Due Diligence Materials
   - ☐ Exhibit "C" Addition to Seller's Closing Documents
   - ☐ Exhibit "D" Seller's Warranties and Representations
   - ☐ Exhibit "E" Permitted Title Exceptions
   - ☐ Other _____.
   - ☐ Other _____.
   - ☐ Other _____.
   - ☐ Other _____.

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

1. Buyer cannot communicate directly with seller. All communication must go through Prince Carter, the agent. If violated 5% commission will be due to Prince Carter, agent, immediately for marking of buyer fee.

2. Buyer is obtaining a private rehab loan. Buyer shall be responsible for all lender fees outside of the origination fee due to American Mortgage Lenders Co.

3. Seller shall pay 1.38% origination fee to American Mortgage Lenders Co.

4. Buyer shall be able to obtain an extension of the due diligence period if needed for 5 days for financing reasons.

5. Buyer is using their own funds or has the option for gap funding as the down payment.

6. If Buyer terminates without performing, the Buyer will forfeit the EM on the contract.

7. SRS Title & Associates will be processing the file and handling the closing. Balfour Title Agency, LLC will be holding the earnest money voluntarily with no service fee.

8. This file will not be held up in probate court if any seller is deceased.

☐ **Additional Special Stipulations (F246) are attached.**

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

| **Buyer Acceptance and Contact Information** | **Seller Acceptance and Contact Information** |
|---|---|

**1 Buyer's Signature**

Phillip Brooks and/or assigned                          11/2/2023
Print or Type Name                                               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell   ☐ Home  ☐ Work

Buyer's E-mail Address

**1 Seller's Signature**

RED APPLE INVESTMENTS LLC                    11/2/2023
Print or Type Name                                               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell   ☐ Home  ☐ Work

Seller's E-mail Address

**2 Buyer's Signature**

Print or Type Name                                               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell   ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

**2 Seller's Signature**

Print or Type Name                                               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell   ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Buyer's Broker/Affiliated Licensee Contact Information**

EXP Realty, LLC.
Buyer Brokerage Firm

                                                             11/2/2023
Broker/Affiliated Licensee Signature          Date

Prince Carter                         417881
Print or Type Name                   GA Real Estate License #

(424) 343-6488
Licensee's Phone Number          Fax Number

pcarter.us@gmail.com
Licensee's E-mail Address

Atlanta Realtors Association
REALTOR® Membership

1230 Peachtree St NE, Suite 1900, Atlanta, GA 30309
Broker's Address

(888) 959-9461
Broker's Phone Number           Fax Number

EXPR01            H-65080
MLS Office Code     Brokerage Firm License Number

**Seller's Broker/Affiliated Licensee Contact Information**

EXP Realty, LLC.
Seller Brokerage Firm

                                                             11/2/2023
Broker/Affiliated Licensee Signature          Date

Prince Carter                         417881
Print or Type Name                   GA Real Estate License #

(424) 343-6488
Licensee's Phone Number          Fax Number

pcarter.us@gmail.com
Licensee's Email Address

Atlanta Realtors Association
REALTOR® Membership

1230 Peachtree St NE, Suite 1900, Atlanta, GA 30309
Broker's Address

(888) 959-9461
Broker's Phone Number           Fax Number

EXPR01            H-65080
MLS Office Code     Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of          11/2/2023
and has been filled in by Prince Carter                                                              .

Copyright© 2023 by Georgia Association of REALTORS®, Inc.          CF04, Commercial Purchase and Sale Agreement, Page 9 of 9, 01/01/23

DocuSign Envelope ID: 42A78B9A-9EEE-4C6E-B6B2-5A13D14A7913

11067
00003

## Exhibit A

FILED
CLAYTON COUNTY, GA

2017 APR -5  AM 9: 02

JACQULINE D. WILLS
CLERK SUPERIOR COURT
9 066

After Recording, Please Return To:
STEVENS, STEVENS & OLIVER, LLC
4167 ROSWELL ROAD #890
Atlanta, GA 30328

FILE #: 17-193

STATE OF GEORGIA

COUNTY OF FULTON

Clayton County, Georgia
Real Estate Transfer Tax
Paid $ 0.385.00
Date 4-5 20 17
JACQULINE D. WILLS
Clerk, Superior Court

## WARRANTY DEED

THIS INDENTURE, Made the 29th day of March, in the year Two Thousand Seventeen (2017), between TARA WOODS INVESTMENTS, LLC, as party or parties of the first part, hereinafter called Grantor, and RED APPLE INVESTMENTS, LLC a New and Mexico Limited Liability Company, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH: That Grantor for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATION, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened and conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

THIS CONVEYANCE is made subject to all zoning ordinances, easement and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said described property, with all and singular the rights, members and appurtenances hereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the said described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written

Witness

Notary Public

ANDREA A. CORRADO
Notary Public, State of Florida
Commission# GG 36102
My comm. expires Oct. 2, 2020

TARA WOODS INVESTMENTS, LLC

BY: RUBEN SANTURIAN    (Seal)
ITS:
    (Seal)
    (Seal)
    (Seal)

PB
a3dce0e

RAI L
aef1033

BK11067PG003

DocuSign Envelope ID: 42A78B9A-9EEE-4C6E-B6B2-6A13D14A7913

11067
00004

Exhibit "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 175 OF
THE 13TH DISTRICT OF CLAYTON COUNTY, GEORGIA, AND BEING MORE
PARTICULARLY DESCRIBED ON PLAT OF SURVEY OF SHERWOOD FOREST
APARTMENTS PREPARED BY MELVIN E. HYDE, A GEORGIA REGISTERED LAND
SURVEYOR, DATED JULY 15, 1985, AS REVISED ON MARCH 19, 1986, AND BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:





BEGINNING AT A POINT ON THE SOUTH RIGHT-OF-WAY LINE OF SHERWOOD
DRIVE
(A 100 FOOT RIGHT-OF-WAY) TWO HUNDRED (200) FEET WEST, AS MEASURED
ALONG THE SOUTH RIGHT-OF WAY LINE OF SHERWOOD DRIVE, FROM THE
SOUTHWEST CORNER OF THE INTERSECTION OF SHERWOOD DRIVE AND
DONCASTER ROAD (A 50 FOOT RIGHT-OF-WAY); THENCE SOUTH 89 DEGREES 54
MINUTES 30 SECONDS WEST, ALONG THE SOUTH RIGHT-OF-WAY LINE OF
SHERWOOD DRIVE, FOUR HUNDRED TEN AND EIGHT TENTHS (410.8) FEET TO
IRON PIN, SAID IRON PIN BEING LOCATED ONE HUNDRED FIFTY (150) FEET EAST,
AS MEASURED ALONG THE SOUTH RIGHT-OF-WAY LINE OF SHERWOOD DRIVE,
FROM THE SOUTHEAST CORNER OF THE INTERSECTION OF SHERWOOD DRIVE
AND THE RIGHT-OF-WAY LINE OF U.S. HIGHWAY 41; THENCE SOUTH 00 DEGREE 53
MINUTES 55 SECONDS WEST, THREE HUNDRED FIFTY (350) FEET TO A POINT;
THENCE SOUTH 00 DEGREE 56 MINUTES 22 SECONDS WEST, FOUR HUNDRED
TWENTY FOUR AND NINE TENTHS (424.9) FEET TO AN IRON PIN; THENCE SOUTH 89
DEGREE 38 MINUTES 30 SECONDS EAST, SIX HUNDRED FORTY SEVEN AND FIVE
TENTHS (647.5) FEET TO AN IRON PIN ON THE WESTERLY RIGHT-OF-WAY OF
DONCASTER ROAD; THENCE NORTHERLY ALONG THE WESTERLY RIGHT-OF-WAY
LINE OF DONCASTER ROAD; AND FOLLOWING THE CURVATURE THEREOF, FIVE
HUNDRED TWENTY AND TWO TENTHS (520.2) FEET TO A POINT, SAID POINT
BEING LOCATED TWO HUNDRED (260) FEET SOUTH AS MEASURED ALONG THE
WESTERLY RIGHT-OF-WAY LINE OF DONCASTER ROAD, FROM THE SOUTHWEST
CORNER OF THE INTERSECTION OF DONCASTER ROAD, FROM THE SOUTHWEST
CORNER OF THE INTERSECTION OF DONCASTER ROAD AND SHERWOOD DRIVE;
THENCE NORTH 89 DEGREES 25 MINUTES 44 SECONDS WEST, TWO HUNDRED
FOUR AND ONE TENTH (204.1) FEET TO A POINT; THENCE RUNNING NORTH 00
DEGREE 55 MINUTES EAST, TWO HUNDRED SIXTY (260) FEET TO A POINT ON THE
SOUTH RIGHT-OF-WAY LINE OF SHERWOOD DRIVE, SAID POINT BEING THE POINT
OF BEGINNING.

BK11067PG0004



# AMENDMENT TO AGREEMENT
## AMENDMENT # __1__

Date: _____ 11/8/2023 _____



**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between <u>Phillip Brooks and/or assigned</u>

_____ ("Buyer") and <u>RED APPLE INVESTMENTS LLC</u> ("Seller"),

with a Binding Agreement Date of _____ 11/2/2023 _____ for the purchase and sale of real property located at:

<u>661 Sherwood Drive</u> , <u>Jonesboro</u> , Georgia <u>30236</u> ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

1. All parties agree that the sales contract and the commission agreement are subject to court approval in the seller's bankruptcy case #23-bk-59726-PWB, Northern District of Georgia, Atlanta Division.

2. All parties agree and acknowledge that if the court does not endorse the commission agreement and sales contract, the Buyer is obligated to cover the broker's 1.38% origination fee and the 4.6% commission owed to Prince Carter. All parties agree that should the buyer make payment for the 1.38% broker origination fee and 4.6% commission to Prince Carter, all parties agree that the broker fee and commission to Prince Carter will be subtracted from the total purchase amount offered to the seller and disbursed as the broker's fee comprising the 1.38% origination fee to broker and the 4.6% commission to Prince Carter.

3. All parties agree that in the event the bankruptcy case #23-bk-59726-PWB, Northern District of Georgia , Atlanta Division, is Dismissed, Canceled, or Terminated, the Seller(s) commit to honoring the terms of the sales contract and commission agreement.

☑ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

_Phillip Brooks and/or assigned_                                    _RED APPLE INVESTMENTS LLC_
**1 Buyer's Signature**                                              **1 Seller's Signature**


**2 Buyer's Signature**                                              **2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**              ☐ **Additional Signature Page (F267) is attached.**

<u>EXP Realty, LLC.</u>                                              <u>EXP Realty, LLC.</u>
Buyer Brokerage Firm                                               Seller Brokerage Firm


**Broker/Affiliated Licensee Signature**                           **Broker/Affiliated Licensee Signature**


<u>Atlanta Realtors Association</u>                                 <u>Atlanta Realtors Association</u>
REALTOR® Membership                                                REALTOR® Membership

---

**Acceptance Date.** The above Amendment is hereby accepted, _____ 10:05 _____ o'clock __a__ .m. on the date of _____ 11/10/2023 _____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____ Prince Carter _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/23



# AMENDMENT TO AGREEMENT
## AMENDMENT # __2__

Date: _____11/8/2023_____



**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between **Phillip Brooks and/or assigned** _____ ("Buyer") and **RED APPLE INVESTMENTS LLC** ("Seller"),

with a Binding Agreement Date of _____11/2/2023_____ for the purchase and sale of real property located at:

**661 Sherwood Drive** _____, **Jonesboro** _____, Georgia **30236** ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

1. All parties agree that the sales contract and the commission agreement are subject to court approval in the seller's bankruptcy case #23-bk-59726-PWB, Northern District of Georgia, Atlanta Division.

2. All parties agree and acknowledge that if the court does not endorse the commission agreement and sales contract, the Buyer is obligated to cover the broker's 1.38% origination fee and the 4.6% commission owed to Prince Carter. All parties agree that should the buyer make payment for the 1.38% broker origination fee and 4.6% commission to Prince Carter, all parties agree that the broker fee and commission to Prince Carter will be subtracted from the total purchase amount offered to the seller and disbursed as the broker's fee comprising the 1.38% origination fee to broker and the 4.6% commission to Prince Carter.

3. All parties agree that in the event the bankruptcy case #23-bk-59726-PWB, Northern District of Georgia , Atlanta Division, is Dismissed, Canceled, or Terminated, the Seller(s) commit to honoring the terms of the sales contract and commission agreement.

☑ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

| | |
|---|---|
| *Phillip Brooks and/or assigned* | *RED APPLE INVESTMENTS LLC* |
| **1 Buyer's Signature** | **1 Seller's Signature** |
| | |
| **2 Buyer's Signature** | **2 Seller's Signature** |
| ☐ Additional Signature Page (F267) is attached. | ☐ Additional Signature Page (F267) is attached. |
| **EXP Realty, LLC.** | **EXP Realty, LLC.** |
| Buyer Brokerage Firm | Seller Brokerage Firm |
| **Broker/Affiliated Licensee Signature** | **Broker/Affiliated Licensee Signature** |
| **Atlanta Realtors Association** | **Atlanta Realtors Association** |
| REALTOR® Membership | REALTOR® Membership |

**Acceptance Date.** The above Amendment is hereby accepted, _____10:05_____ o'clock ___a___ .m. on the date of ____11/10/2023____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____Prince Carter_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.

F701, Amendment to Agreement, 01/01/23



# AMENDMENT TO AGREEMENT
## AMENDMENT # __2__



Date: _____ 11/22/2023 _____

**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between <u>Phillip Brooks and/or assigned</u>
_____ ("Buyer") and <u>RED APPLE INVESTMENTS LLC</u> ("Seller"),

with a Binding Agreement Date of _____ 11/2/2023 _____ for the purchase and sale of real property located at:

<u>661 Sherwood Drive</u>, <u>Jonesboro</u>, Georgia <u>30236</u>  ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

1. All parties agree that the earnest money shall be turned in to Balfour Title Agency no later than November 28, 2023

2. All parties agree that the seller paid closing costs on the contract shall be increased to $800,000.00

3. All parties agree that the Articles of Incorporation and Operating Agreement shall be submitted to Yashica Berry no later than November 28, 2023

4. All parties agree that the closing date on the contract shall be extended to December 15, 2023

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

*Phillip Brooks and/or assigned*

**1 Buyer's Signature**

*RED APPLE INVESTMENTS LLC*

**1 Seller's Signature**

**2 Buyer's Signature**

**2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**

☐ **Additional Signature Page (F267) is attached.**

<u>EXP Realty, LLC.</u>
Buyer Brokerage Firm

<u>EXP Realty, LLC.</u>
Seller Brokerage Firm

**Broker/Affiliated Licensee Signature**

**Broker/Affiliated Licensee Signature**

<u>Atlanta Realtors Association</u>
REALTOR® Membership

<u>Atlanta Realtors Association</u>
REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, _____ 11:50 _____ o'clock ___p___ .m. on the date of _____ 11/22/2023 _____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____ Prince Carter _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/23



**eXp REALTY**

# AMENDMENT TO AGREEMENT
## AMENDMENT # ___5___
Date: _____12/15/2023_____

*Georgia*REALTORS®

**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between <u>Phillip Brooks and/or assigned</u>

_____ ("Buyer") and <u>RED APPLE INVESTMENTS LLC</u> ("Seller"),

with a Binding Agreement Date of _____12/15/2023_____ for the purchase and sale of real property located at:

<u>661 Sherwood Drive</u> , <u>Jonesboro</u> , Georgia <u>30236</u> ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

All involved parties hereby mutually consent to the extension of the purchase and sale contract until the closing date of January 23, 2023. This extension is contingent upon the complete disbursement of Prince Carter 4.2% commissions and Yashica Berry 1.38% commissions at the closing of the bankruptcy case #23-59726PWB

DocuSigned by:

*Phillip Brooks*
00976868B714485...

DocuSigned by:

*Red Apple Investments LLC*
146D528EDA0F4C8...

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

DocuSigned by:                                         DocuSigned by:

*Phillip Brooks*                                      *Red Apple Investments LLC*
00976868B714485                                       146D528EDA0F4C8
**1 Buyer's Signature**                               **1 Seller's Signature**

_____                       _____
**2 Buyer's Signature**                               **2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**   ☐ **Additional Signature Page (F267) is attached.**

<u>EXP Realty, LLC</u>                                 <u>EXP Realty, LLC.</u>
Buyer Brokerage Firm                                  Seller Brokerage Firm
DocuSigned by:                                         DocuSigned by:

[signature]                                            [signature]

**Broker/Affiliated Licensee Signature**              **Broker/Affiliated Licensee Signature**

<u>GAR</u>                                             <u>GAR</u>
REALTOR® Membership                                    REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, _____ o'clock _____.m. on the date of _____, ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ___Prince Carter___ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/23

EXHIBIT "B"
**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | **Case No. 23-59726-PWB** |
| | : | |
| **RED APPLE INVESTMENTS LLC,** | : | **Chapter 11** |
| | : | |
| Debtor. | : | |
| | : | |

**ORDER GRANTING MOTION FOR ENTRY OF ORDER APPROVING SALE OF**
**PROPERTY TO PHILLIP BROOKS OUTSIDE OF THE ORDINARY COURSE OF**
**BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, TO**
**MAKE CERTAIN DISBURSEMENTS AT CLOSING, AND FOR RELATED RELIEF**

WHEREAS, Red Apple Investments LLC (the "**Debtor**") filed its *Motion For Entry Of Order Approving Sale Of Property To Phillip Brooks Outside Of The Ordinary Course Of Business To Phillip Brooks Free And Clear Of All Liens, Claims And Encumbrances, To Make Certain Disbursements At Closing, And For Related Relief* on January 5, 2024 [Doc. No. ____] (the "**Motion**");

WHEREAS, as is more particularly set forth in the Motion, the Debtor owns and operates a 94-unit apartment complex known as Tara Woods Apartment located in Clayton County, Georgia and having a local address of 661 Sherwood Drive, Jonesboro, Georgia 30236 (the "**Property**"). The Annual Tax Assessment issued by the Clayton

County Board of Tax Assessors for Tax Year 2023 shows the Current Year Fair Market Value of the Property to be $10,229.606.00.

WHEREAS, pursuant to the Motion, the Debtor seeks entry of a Court Order authorizing the Debtor to sell the Property to Phillip Brooks and/or assigns (the "**Buyer**") pursuant to the terms of that certain Commercial Purchase And Sale Agreement dated November 1, 2023, as amended, a true and correct copy of which is attached to the Motion as an exhibit (the "**Sale Agreement**"), free and clear of all liens, claims and encumbrances, with all valid liens, claims and encumbrances to attach to the sales proceeds. In addition, the Debtor seeks authorization to make certain disbursements at closing and related relief.

WHEREAS, the Debtor submits that the following is an accurate summary of the terms of the Sale Agreement although parties in interest are urged to read the Sale Agreement so that they may fully understand its terms. The gross purchase price for the Property is Nine Million Nine Hundred Thousand Dollars ($9,900,000.00) (the "**Purchase Price**"). Earnest money in the amount of Fifty Thousand Dollars ($50,000.00) (the "**Earnest Money**") has been deposited with Balfour Title Agency, LLC (the "**Escrow Agent**"). Closing is to occur January 23, 2024 (the "**Closing Date**") to be extended via amendment to a date after the hearing date on Court approval of this Motion. The closing law firm is SRS Title & Associates (the "**Closing Attorneys**"). The **Binding Agreement Date** is November 2, 2023. There is a **Due Diligence Period** of twenty-one (21) days from the Binding Agreement Date. The Buyer is obtaining a private loan. The Buyer shall be responsible for all lender fees outside of the origination fee due to American Mortgage Lenders Co. The Seller shall pay the 1.38% origination fee to American Mortgage Lenders Co. The Property is in need of repair. The Buyer has obtained a written estimate of $4,903,968.00 required to perform the needed repair and restoration work. The Seller shall contribute $800,000.00 (the "**Seller Repair Contribution**") at Closing as a contribution towards the required repair and restoration costs.

WHEREAS, the Debtor believes but does not warrant that the following parties assert the following lien claims:

(a) Forbix Capital Corp. ("**Forbix**") holds a deed to secure debt on the Property with an asserted claim amount of $7,200,000.00;

(b) The Clayton County Tax Commissioner holds claims for unpaid ad valorem property taxes in the approximate amount of $161,611.39 for tax year 2023;

(c) Kreo Building Solutions, LLC holds a Writ of Fi Fa filed October 2, 2023 with the Clerk, Superior Court of Clayton County, in the amount of $226,800.00;

(d) Delta Carpet & Decor, LLC filed two separate Mechanics And Materialmens Liens on July 7, 2022 in the aggregate amount of $43,629.34;

(e) Structure Medic Cleaning and Restoration LLC filed a Claim of Lien on May 23, 2023 in the amount of $8,500.00;

(f) Rhino Environmental LLC asserts a lien filed in the Clayton County public records having a claim amount of approximately $32,208.00; and

(g) Yaniv Yair filed a Deed to Secure Debt on October 30, 2023 with the Clayton County Superior Court showing a $63,500.00 claim amount. However, the Deed to Secure Debtor was filed after the Petition Date and is therefore not a properly perfected security interest in the Property.

WHEREAS, the sale is to be conducted free and clear of all liens, claims, encumbrances and interests, with all liens, claims, encumbrances and interests to attach to the proceeds of the sale (the "**Sales Proceeds**") in the same amount, validity and priority as they may have attached to the Property as of the Petition Date. The Debtor further requests authority to make certain disbursements at closing as more particularly described in the Sale Agreement and the Motion; and

WHEREAS, the Court has considered the Motion and all other matters of record, including the lack of any unresolved responses thereto, and based on the foregoing, no further notice or hearing is required and the Court finds that good cause exists to grant the relief requested in the Motion.

Accordingly, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

A.   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.   The Court has jurisdiction over the Motion and the transactions contemplated pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A) and (N). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.   The statutory predicates for the relief sought in the Motion are Sections 105 and 363 of 11 U.S.C. §§ 101 et seq. (as amended, modified or supplemented, "**Bankruptcy Code**"), and Bankruptcy Rules 2002, 6004, and 9014.

E.   As evidenced by the certificates of service previously filed with the Court (i) proper, timely, adequate, and sufficient notice of the Motion and the opportunity to object to the same, and all of the transactions at issue (collectively, all transactions contemplated in connection with the sale of the Property are referred to as the "**Transactions**") has been provided; (ii) such notice was good, sufficient, and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion is necessary or shall be required.

F.   The Debtor (i) has full power and authority to sell the Property and to enter into all other documents, including a deed or deeds transferring title to Buyer, as may be appropriate to document the sale of the Property as authorized herein (collectively, the "**Sale Documents**"); (ii) has all of the power and authority necessary to consummate the sale of the Property; and (iii) has taken all action necessary to authorize and approve the sale of the Property as authorized herein.

G.   The Debtor has demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purpose and justification for the sale of the Property and the other Transactions authorized herein, pursuant to Section 363(b) of the Bankruptcy Code. Exigent circumstances and sound business reasons exist for the Debtor's sale of the Property pursuant to the terms of the Sale Motion. The consummation of the sale of the Property to the Buyer as

authorized herein constitutes the exercise by the Debtor of sound business judgment and such act is in the best interests of the Debtor, the estate, and creditors. The Court finds that the Debtor has articulated good and sufficient business reasons justifying the sale of the Property pursuant to Sections 105 and 363 of the Bankruptcy Code.

H.    The Sale Agreement and the Transactions contemplated by the Sale Agreement and the sale authorized to Buyer herein were negotiated and have been and are undertaken by the Debtor and the Buyer at arm's length, without collusion or fraud and in good faith within the meaning of Section 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Debtor and the Buyer are entitled to the protections of Section 363(m) of the Bankruptcy Code.

I.    Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Transactions to be avoided under Section 363(n) of the Bankruptcy Code.

J.    The aggregate consideration provided by the Buyer for the Property (i) is fair and reasonable, (ii) is the highest and best offer for the Property, and (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical, available alternative. The entry of this Order and the approval of the sale of the Property to Buyer pursuant to Section 363 of the Bankruptcy Code are necessary and appropriate to maximize the value of Movants' estates.  In addition, the relief requested in the Sale Motion is a necessary and appropriate step toward enabling Movants to successfully reorganize in this Chapter 11 case and is otherwise in the best interests of the Debtor, creditor, the estate, and all other parties in interest in this case.

K.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

L.    The transfer of the Property to the Buyer will be a legal, valid, and effective transfer of the Property, and will vest the Buyer with all right, title, and interest of the Debtor and the bankruptcy estate to the Property free and clear of all liens, claims, rights, interests, and encumbrances of any kind or nature whatsoever, including but not limited to, those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interest in the Property, or any similar rights; and (ii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention

agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction of the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this case pursuant to Chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, the "**Interests**").

M.   The Buyer would not consummate the Transactions authorized herein, thus adversely affecting the Debtor, the estate, and creditors, if the sale of the Property to the Buyer was not free and clear of all interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of the Interests.

N.   The Buyer is authorized to sell the Property free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All non-debtor parties with any claims or interests in the Property who did not object to the sale, the Sale Contract or the Motion are deemed to have consented to such sale pursuant to section 363(f)(2) of the Bankruptcy Code.

O.   Consummation of the sale of the Property at this time is in the best interests of the Debtor's creditors, the estates, and other parties in interest.

P.   Time is of the essence in closing the Transactions. The Property is being sold "as is," with all faults. The Debtor shall have no obligation to make any repairs or replacements to the Property.

For all of the foregoing and after due deliberation, the Court ORDERS, ADJUDGES, AND DECREES THAT:

1.   The Motion is GRANTED as provided hereinbelow.

2.   The Transactions are hereby approved in all respects.

3.      From the Sale Proceeds, the Debtor is authorized to pay at closing as follows:

a. All usual and customary closing costs and prorations at Closing as reflected in the Sale Agreement;

b. Mortgage payoff to Forbix in the asserted amount of approximately $7,200,000.00[4] with the exact amount of the payment to be verified by appropriate payoff letter provided by Forbix;

c. $226,800.00 to Kreo Building Solutions, LLC in connection with the Writ of Fi Fa filed October 2, 2023 in the Clayton County public records that it holds;

d. Ad valorem property taxes due to the Clayton County Tax Commissioner;

e. Real estate commission in the amount of 4.6% ($455,400.00) to real estate broker EXP Realty, LLC/Prince Carter[5];

f. 1.38% ($136,620.00) loan origination fee to American Mortgage Lenders Co./Yashica Berry; and

g. The $800,000.00 Seller Repair Contribution.

4.      The remaining net sales proceeds shall be escrowed with the real estate closing law firm of McCain Cigelske Law Firm, Tyler C. McCain Esq., 6190 Powers Ferry Road, Suite 190, Atlanta, GA 30339[6]. Notwithstanding anything contained herein to the contrary, to the extent that any of the payment amounts referenced in paragraph number 3 above are in dispute, then they shall not be paid at Closing and payment of the same shall be subject to further Court Order.

5.      Pursuant to Section 363 of the Bankruptcy Code, the Debtor is authorized to consummate the sale of the Property and the Transactions in accordance with the terms of this Order and to execute all instruments and documents that may be reasonably necessary or

---

4 It is not currently clear how Forbix calculates its asserted payoff amount.

5 A separate Application has or will be filed with the Court seeking entry of a Court Order approving the Commercial Exclusive Seller Brokerage Engagement Agreement dated November 17, 2023 by and between the Debtor and EXP Realty, LLC/Prince Carter

6 A separate Application has or will be filed with the Court seeking entry of a Court Order approving the Escrow Agreement dated January ___, 2024 by and between the Debtor and McCain Cigelske Law Firm.

desirable to implement the sale of the Property as approved herein and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, the Property.

6. This Sale Order and the Sale Documents shall be binding in all respects upon all creditors and parties in interest (whether known or unknown) of the Debtor, all successors, designees or assigns of the Buyer, the Debtor, and their affiliates.

7. Except as expressly permitted or otherwise specifically provided for in this Order, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Property shall be transferred to the Buyer at, and subject to and conditioned upon, the Closing (as defined in the Sale Contract), and upon Closing shall be, free and clear of all Interests of any kind or nature whatsoever, with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Property, subject to any claims and defenses the Debtor and the bankruptcy estate may possess with respect thereto.

8. Except as expressly permitted or otherwise specifically provided by this Order, all persons and entities, including, but not limited to, all debt security holders, governmental, tax, and regulatory authorities, lenders, employees, trade, and other creditors holding Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under, out of, in connection with, or in any way relating to, the Debtor, the Property, or the transfer of the Property to the Buyer, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Property, such persons' or entities' Interests.

9. The consideration provided by the Buyer for the Property shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

10. The consideration provided by the Buyer for the Property is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code or under any other section of the Bankruptcy Code.

11.    This Court retains jurisdiction to enforce and implement the terms of this Order and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Property to the Buyer; (b) compel delivery of the purchase price by Buyer or performance of other obligations of the Buyer under the terms of this Order (c) interpret, implement, and enforce the provisions of this Order, however, in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Sale Contract or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

12.    The Transactions are undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Property to Buyer, unless such authorization is duly stayed pending such appeal.  The Buyer is a purchaser in good faith of the Property and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

13.    This Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the estates, and all creditors and parties in interest; the Buyer, and its respective affiliates, designees, successors, and assigns; and any affected third parties including, but not limited to, all persons asserting an interest in the Property to be sold to the Buyer as authorized herein.

14.    Any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect upon the Debtor's estate.

15.    Nothing contained in this Order shall be construed to apply to any person, governmental authority, or other entity that is beyond the jurisdiction of this Court, except as may otherwise be appropriate under applicable law.

16. The stay of orders authorizing the use, sale, or lease of property as provided for in Bankruptcy Rule 6004(h) shall not apply to this Order, and this Order is immediately effective and enforceable.

17. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the Transactions. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

18. The Debtor's counsel shall serve a copy of this Order upon the United States Trustee, all creditors, all parties asserting an interest in the Property, and any party having filed a Notice of Appearance requesting service of notices, and shall file a Certificate of Service.

END OF DOCUMENT

Prepared and submitted by,
PAUL REECE MARR, P.C.
the Debtor's attorney

---

Paul Reece Marr
GA Bar # 471230
6075 Barfield Road; Suite 213
Sandy Springs, GA 30328
(770) 984-2255
paul.marr@marrlegal.com

DISTRIBUTION LIST

Pursuant to Local Rule 9013-2(b) for the United States Bankruptcy Court, Northern District of Georgia, following is a list of all parties to be served with a copy of this Order:

Thomas Dworschak
Office of the United States Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303

Phillip Brooks
541 10th Street NW
Unit 2119
Atlanta, GA 30318

EXP Realty, LLC
Prince Carter
1230 Peachtree Street NE
Suite 1900
Atlanta, GA 30309

Benjamin R Keck
Keck Legal, LLC
Suite 104-252
2566 Shallowford Road
Atlanta, GA 30345

McCain Cigelske Law Firm
Tyler C. McCain Esq.
6190 Powers Ferry Road, Suite 190
Atlanta, GA 30339

Michael Brian Pugh
Thompson, O'Brien, Kappler & Nasuti, P.C.
Suite 400
2 Sun Court
Peachtree Corners, GA 30092

James W. Hays
Hays & Potter, LLP
Suite 300
3945 Holcomb Bridge Rd.
Peachtree Corners, GA 30092

SRS Title & Associates
3400 Peachtree Rd NE
Suite 1300
Atlanta, GA 30326

Balfour Title Agency, LLC
2480 Briarcliff Road NE
Suite 6 #335
Atlanta, GA 30329

Structure Medic Cleaning and
Restoration LLC
3541 Cherokee St Bldg 100
Kennesaw GA 30144

Structure Medic Cleaning
and Restoration LLC
c/o Mark D. Gropp, Attorney At Law
2020 Towne Lake Hills West
Woodstock, GA 30189

Clayton Cnty Tax Commissioner
Annex 3, 2nd Floor
121 S. McDonough Street
Jonesboro GA 30236